FILED
2022 Oct-14  PM 02:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **KATHRYN THRASHER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO:** |
| | ) | |
| **UAB HOSPITAL** | ) | |
| **MANAGEMENT, L.L.C.; THE** | ) | **JURY TRIAL DEMANDED** |
| **BOARD OF TRUSTEES** | ) | |
| **OF THE UNIVERSITY OF** | ) | |
| **ALABAMA AT BIRMINGHAM,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## COMPLAINT

---

Plaintiff Kathryn Thrasher ("Plaintiff" or "Ms. Thrasher"), by and through her undersigned counsel, hereby makes her Complaint against Defendants UAB Hospital Management, LLC and The Board of Trustees of The University of Alabama at Birmingham (collectively referred to as "Defendants," "UAB," or "employer") for violations of federal law. As grounds for her Complaint, Plaintiff states as follows:

## JURISDICTION AND VENUE

1.      This is a complaint for legal and equitable relief to redress violations by the Defendants of the Plaintiff's rights secured by Section 504 of the

Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq*., as amended.

2.      Federal subject matter jurisdiction exists pursuant to: 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343(a)(3) (civil rights); and 29 U.S.C. § 794 (Rehabilitation Act).

3.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2).

## **PARTIES**

4.      Plaintiff is a resident of Jefferson County and over the age of nineteen (19) years old.  Plaintiff was employed by Defendants as a Registered Nurse from on or about June 18, 2019 until UAB fired her in November of 2020.

5.      Defendant UAB Hospital Management, L.L.C. was Plaintiff's "employer" for the purposes of Section 504 of the Rehabilitation Act of 1973, codified as 29 U.S.C. § 794, during all times relevant to this complaint.  This Defendant is a recipient of federal financial assistance, has more than fifty (50) employees, and conducts business in the Northern District of Alabama.

6.      Defendant The Board of Trustees of The University of Alabama at Birmingham was Plaintiff's "employer" for the purposes of Section 504 of the Rehabilitation Act of 1973, codified as 29 U.S.C. § 794, during all times relevant to this complaint. This Defendant is a recipient of federal financial assistance, has more than fifty (50) employees, and conducts business in the Northern District of

Alabama.

7.      Defendants UAB Hospital Management, L.L.C. and The Board of
Trustees of The University of Alabama at Birmingham were Plaintiff's joint
employers for purposes of her claims under Section 504 of the Rehabilitation Act
of 1973, codified as 29 U.S.C. § 794. *E.g., Virgo v. Riviera Beach Assocs., Ltd.*,
30 F.3d 1350 (11th Cir. 1994).

## NATURE OF THE ACTION

8.      Plaintiff brings this action to redress unlawful practices and acts of
intentional disability discrimination which UAB, as Plaintiff's employer,
committed.

9.      This lawsuit seeks to redress grievances resulting from actions of
UAB, its agents, servants, and employees with respect to Plaintiff's employment
and otherwise.

## STATEMENT OF FACTS

10.      Plaintiff Kathryn Thrasher is a 33-year-old Registered Nurse with a
master's degree in adult health nursing and substantial experience in the nursing
field.

11.      Ms. Thrasher first worked for Defendants in perioperative services in
2011, and she continued in that capacity for about six years until she left UAB for a

better opportunity.

12.    UAB rehired Plaintiff to serve as a Registered Nurse providing direct patient care in the operating room on or about June 18, 2019.

13.    Ms. Thrasher has Pulmonary Alveolar Proteinosis, a permanent disability.

14.    Pulmonary Alveolar Proteinosis is a rare, chronic autoimmune disease in which a type of protein builds up in the air sacs of the lungs; this severely impacts lung functionality and makes breathing difficult.

15.    Ms. Thrasher's disability substantially limits her respiratory abilities as well as the major life activities of: breathing, sleeping, communicating, eating, moving up and down stairs, walking farther than short distances, holding and caring for her children, and prolonged standing, among other things.

16.    In short, when breathing is difficult, almost everything is difficult for Plaintiff.

17.    Ms. Thrasher's disability makes her especially vulnerable to airborne diseases, viruses, or other illnesses due to the impact on her the respiratory system.

18.    Indeed, exposure to contagious individuals with airborne pathogens is a life-threatening matter for Plaintiff.

19.    Prior to late 2019, the risk to Plaintiff was nominal because the

probability of her working with these patients was low.

20.     At that time, UAB followed proper personal protective equipment ("PPE") protocols (*e.g.*, staff was not forced to reuse masks).  This, along with Plaintiff's heightened diligence regarding strict compliance with PPE best practices, was sufficient to protect Plaintiff at work.

21.     In late December 2019, however, people began rapidly contracting a novel infectious disease ultimately identified as a type of coronavirus called "COVID-19."

22.     COVID-19 is airborne and highly contagious; it specifically attacks the lungs, moving up and down the respiratory tract, hijacking and killing healthy lung cells.

23.     In March 2020, the World Health Organization declared COVID-19 a global pandemic.

24.     Around this same time, UAB was receiving an influx of patients who tested positive for COVID-19.

25.     As a registered nurse at UAB, the essential functions of Plaintiff's job did not require her to work directly with patients.

26.     To that end, UAB's generic registered nurse job description applicable to Plaintiff emphasized critical thinking, teamwork, and coordination; it also

specifically contemplated non-patient care roles, transfers, and reassignments within the same unit.

27.     Plaintiff soon recognized she would be working directly with COVID-19 positive patients, a substantial risk to Plaintiff's life due to her disability.

28.     Moreover, in approximately March 2020, UAB began requiring Plaintiff and her co-workers to rely on faulty, previously used face masks.

29.     Attempting to protect herself while on-the-job during the pandemic, Plaintiff purchased and equipped a half-face respirator approved by the National Institute for Occupational Safety and Health, among other enhanced PPE.

30.     Assistant Nurse Manager Kayla Evans ("Evans"), Plaintiff's supervisor, publicly ridiculed Plaintiff for wearing this respirator and claimed it made the department "look bad."

31.     On or about March 13, 2020, Plaintiff learned she was exposed to COVID-19 at which point she quarantined and followed UAB's protocol.

32.     Justifiably concerned about her safety, on or about March 30, 2020, Plaintiff contacted UAB about her disability.  To that end, she left a voicemail with UAB Human Resources ("HR") inquiring about policies and protections for "high risk" employees.

33.     UAB began placing certain "at risk" operating room employees (*e.g.*,

high risk due to age or pregnancy) on remote work status, or on outright paid leave with benefits.

34.     As early as March 2020, Plaintiff began pursuing reasonable accommodations for her "at risk" status due to her disability.

35.     After Plaintiff left five voicemails over the course of ten days, on or about April 9, 2020, HR finally returned her call.  But this was only to tell Plaintiff she needed to contact a different HR representative, Debra Crook ("Crook").

36.     Although Ms. Thrasher was reluctant to inform her direct reports about her disability (Evans, in particular), she notified Evans and Assistant Nurse Manager Joseph Harper ("Harper") of her disability and related needs.

37.     On or about April 8, 2020, Plaintiff presented Evans with a letter from her physician in which UAB was asked to allow Plaintiff to work remotely or at least temporarily excuse her from work as an accommodation for her disability.

38.     Evans told Plaintiff she needed to return to work without medical restrictions or resign.  She also discouraged Plaintiff from "involving the whole HR process."

39.     Ms. Thrasher refused to quit her job; instead, on or about April 9, 2020, she emailed Harper informing Harper of her condition and need for an accommodation.

40.     Harper was not helpful.  He merely suggested that Ms. Thrasher use her leave days and "be very diligent" with "donning and doffing of PPE." [1]

41.     On or about April 9, 2020, Plaintiff also emailed Crook, making her fully aware of the situation.[2]

42.     Indeed, on many occasions in April 2020, Plaintiff provided Harper and Evans — along with UAB Human Resources, among others — with physician letters.

43.     These letters explained Plaintiff's condition and requested that she not be required to work directly with COVID-19 patients.

44.      In a meeting on or about April 20, 2020, among other times (upon information and belief), Evans publicly displayed her disdain for Plaintiff's disability.

45.     To that end, Evans led a meeting during which she verbally mocked Plaintiff for wearing a respirator and for her disability in front of Plaintiff's colleagues.

46.     At least one of Ms. Thrasher's co-workers approached Evans to defend

---

[1] As she informed Harper, Plaintiff had lung surgery scheduled for later in the year and needed to conserve her leave time.

[2] In response to Plaintiff's many efforts to seek assistance from Crook, or anyone in UAB's Human Resources Department, she was, for the most part, either ignored or referred back to her Assistant Nurse Managers.

Plaintiff.  Evans then said she intended to force Plaintiff to work without the respirator.

47.     Further, on or about April 20, 2020, Evans conveyed to Plaintiff's colleagues that, in sum and substance, she had no interest or concern regarding Plaintiff, her disability, or the life-threatening work environment in which Plaintiff found herself employed.

48.     On April 22, 2020, Plaintiff again wrote Harper explaining her risk and the necessity of reducing her exposure to COVID-19 positive patients.  Harper stated "UAB has not made any special considerations for any type of work personnel."  Harper, again, suggested Plaintiff rely on PPE and the leave to which she was already entitled.

49.     Discouraged by Harper's response, Plaintiff began leave that same day; she first exhausted FMLA leave and then took personal leave, which she ultimately had approved through October 31, 2020.

50.     At the same time, Plaintiff asked her supervisors and UAB Human Resources for a reasonable accommodation; specifically, Plaintiff asked (1) to be given non-patient care assignments in her unit or, alternatively, (2) for a transfer to one of many available positions for which she was qualified, and which did not require direct exposure to COVID-19 patients.

51.     Example transfers that were appropriate and available included, among many others, Telehealth, nonclinical RN shifts in UAB's Call Center, and shifts in the Supply Department.

52.     UAB routinely facilitates these transfers for its registered nurses and other employees. The transfer option is commonly used to "re-home" UAB staff members who, for example, are unhappy, do not fit the unit culture, or struggle performing their duties.

53.     Further, it was a common practice to reassign operating room RNs like Plaintiff to other roles in the same unit due to medical restrictions. Opportunities available ranged from clerical work to FDA filings and from inventory to quality control, among others.

54.     As just one of many examples, UAB transitioned Harriete Deale — an operating room registered nurse like Plaintiff — to a desk job after a major surgery as a reasonable accommodation, keeping Ms. Deale's employment intact.

55.     Many times, and all the way up through the end of her employment in November 2020, Plaintiff raised these options (remote work, transfer, or reassignment within her unit) with management and HR as part of her request for reasonable accommodation.

56.     Plaintiff diligently applied for open transfer positions which would

accommodate her disability.

57.     On May 6, 2020, Evans and Harper called Ms. Thrasher and, again, pressured her to return to work without medical restrictions or resign. Plaintiff conveyed that she was still seeking a reasonable accommodation.

58.     On or about August 18, 2020, Plaintiff participated in a conference call with Assistant Nurse Managers Evans, Harper, and Melanie Tramell.  Evans led the call. Evans, again, pressured Plaintiff to resign, claiming that quitting and reapplying was a better option than seeking support from HR.

59.     Plaintiff asked if a human resources representative was on the call and was essentially told that bringing HR into the conversation was unnecessary.

60.     Plaintiff reiterated that she preferred an accommodation over ending her employment with UAB; she made numerous suggestions to her supervisors for open transfer positions or reassignment within her department, all available options for which Plaintiff was qualified.

61.     Evans conveyed she saw no need to accommodate Plaintiff and claimed she was confused by the request.

62.     Nonetheless, after Plaintiff made it clear she would not succumb to Evans' pressure to quit, Evans told Plaintiff that UAB would facilitate a transfer to another position.  In other words, Plaintiff was assured that her employment with

UAB both could and would continue.

63.    Evans promised Plaintiff she would personally work with Crook to begin the process of searching for a transfer position, and then present Plaintiff with options.  Evans told Plaintiff that Evans or HR would be in touch.

64.    Plaintiff did her part, applying for open positions for which she was qualified and notifying management of her applications. She reiterated to supervisors, like Evans, of her need for a transfer (or reassignment) as an accommodation for her disability.

65.    A few specific examples of open positions for which Plaintiff was qualified and which she sought as a reasonable accommodation include: Telemed, RN Patient Flow Coordinator, House Supervisor-H, RN Case Manager, RN-Stat RN, RN-Nursing Informatics, and RN Case Manager-H.

66.    On November 6, 2020, Evans called Plaintiff at which time Plaintiff learned of her injury; that is, Plaintiff learned that UAB would not be honoring its prior commitment to grant Ms. Thrasher one of the many options available as a reasonable accommodation for her disability.

67.    Instead, on November 6, 2020, Evans fired Plaintiff.

68.    During the call, Evans claimed she had no idea that Plaintiff needed to be transferred.

69.     Upon information and belief, Plaintiff has since learned that her transfer attempts were rejected, obstructed, or ignored.

70.     Upon information and belief, Evans made the decision to fire Plaintiff, and she obstructed Plaintiff's transfer attempts.

71.     On February 12, 2021, Plaintiff filed a Charge of Disability Discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* with the Equal Employment Opportunity Commission ("EEOC").

72.     The EEOC issued a cause finding in Plaintiff's favor on June 7, 2022, stating: "Based on the foregoing and all evidence of record, it is determined there is reasonable cause to believe Respondent denied Charging Party reasonable accommodation and terminated Charging Party due to her disability in violation of the ADA."

73.     On September 28, 2022, the EEOC issued a Conciliation and Failure of Charge notification, which released Plaintiff's matter for suit.

74.     Despite her best efforts, Ms. Thrasher was without work for many months, and she has suffered substantial financial and emotional loss as a result of UAB's unlawful actions.

75.     The standards used to determine whether the Rehabilitation Act has been violated as it pertains to employment discrimination are the standards applied

under Title I of the Americans with Disabilities Act. 29 U.S.C. § 794(d).

## CAUSES OF ACTION

### Count I
### Section 504 of the Rehabilitation Act Disparate Treatment (termination) Against All Defendants ("UAB")

76.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 4-7, 10-18, 29-32, 34, 35-50, 55-64, 66-74 above as if fully repeated and set forth herein.

77.    Defendants employed Plaintiff — and were Plaintiff's joint employers — for purposes of her claims under Section 504 of the Rehabilitation Act of 1973, codified as 29 U.S.C. § 794.  *E.g., Virgo v. Riviera Beach Assocs*., Ltd., 30 F.3d 1350 (11th Cir. 1994).

78.    Plaintiff is an individual with a physical impairment, Pulmonary Alveolar Proteinosis, which substantially limits her respiratory abilities, a major bodily function, and her abilities in the major life activities of breathing, sleeping, communicating, eating, moving up and down stairs, walking farther than short distances, holding and caring for her children, and prolonged standing, among other things.

79.    Plaintiff has a disability for purposes of Section 504 of the Rehabilitation Act.

80.    UAB was aware that Plaintiff has Pulmonary Alveolar Proteinosis, and her supervisors had full of knowledge of the disability and how it impacted Plaintiff. UAB regarded her as having such a disability, and Defendants had records of Plaintiff's impairment.

81.    Plaintiff was a qualified individual capable of performing the essential functions of her job, which did not require Plaintiff to work directly with COVID-19 patients, with a reasonable accommodation.

82.    Plaintiff avers that Assistant Nurse Manager Kayla Evans, among others (upon information and belief), had discriminatory animus against Plaintiff due to her disability, and that Evans demonstrated this by mocking Plaintiff, threatening to take away her PPE, and trying to force Plaintiff to quit on numerous occasions.

83.    Further, Plaintiff avers that Evans (upon information and belief) made the decision to fire Plaintiff.

84.    UAB unlawfully and intentionally terminated Plaintiff's employment in November 2020.  "But for" Plaintiff's disability, she would not have been fired. Further, Plaintiff avers UAB fired her "solely" because of her disability — actual, regarded, and/or record-based — in violation of Section 504 of the Rehabilitation Act. *But see Natofsky v. City of New York*, 921 F.3d 337 (2d Cir. 2019) ("but for"

causation standard, and not "sole" causation standard, applies to employment disability discrimination claims under Section 504 of the Rehabilitation Act).

85.    As a proximate result of UAB's unlawful discrimination, Plaintiff has suffered financial loss, loss of career advances, loss of benefits, and emotional distress.

86.    Plaintiff seeks all relief available at law including, but not limited to lost wages and benefits, loss of retirement, loss of future earnings, compensatory damages, emotional distress damages, interest, attorneys' fees, and costs.

## Count II
## Section 504 of the Rehabilitation Act Failure to Accommodate
## Against All Defendants ("UAB")

87.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 4-7, 10-75, above as if fully repeated and set forth herein.

88.    As stated in Count I, Defendants employed Plaintiff — and were Plaintiff's joint employers — for purposes of her claims under Section 504 of the Rehabilitation Act of 1973, codified as 29 U.S.C. § 794. *E.g., Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350 (11th Cir. 1994).

89.    Again, Plaintiff is an individual with a physical impairment, Pulmonary Alveolar Proteinosis, which substantially limits her respiratory abilities, a major bodily function, and her abilities in the major life activities of breathing, sleeping,

communicating, eating, moving up and down stairs, walking farther than short distances, holding and caring for her children, and prolonged standing, among other things.

90.     Plaintiff has a disability for purposes of Section 504 of the Rehabilitation Act.

91.     UAB was aware that Plaintiff has Pulmonary Alveolar Proteinosis, and her supervisors had full of knowledge of the disability and how it impacted Plaintiff. UAB regarded her as having such a disability, and Defendants had records of Plaintiff's impairment.

92.     Plaintiff's disability makes her especially vulnerable to airborne viruses like COVID-19.

93.     Plaintiff was a qualified individual capable of performing the essential functions of her job, which did not require Plaintiff to work directly with COVID-19 patients, with a reasonable accommodation.

94.     Plaintiff asked for reasonable accommodation myriad times; to that end, Plaintiff requested — personally and through physicians — that she not be required to work directly with COVID-19 patients due to her lung condition. Plaintiff expected the request would be granted until she learned, in November 2020, that UAB decided to terminate her employment instead.

95.     Numerous times, Plaintiff sought remote telehealth assignments; to be given non-patient care assignments in her unit; and for a transfer to one of many available positions for which she was qualified, and which did not require direct exposure to COVID-19 patients.

96.     Plaintiff pursued numerous available transfer positions for which she was qualified, and which would have served as a reasonable accommodation for her disability.

97.     Example transfers that were appropriate and available included, among many others, Telemed, nonclinical RN shifts in UAB's Call Center, and shifts in the Supply Department.  A few specific examples of open positions for which Plaintiff was qualified and which she sought as a reasonable accommodation include: Telemed, RN Patient Flow Coordinator, House Supervisor-H, RN Case Manager, RN-Stat RN, RN-Nursing Informatics, and RN Case Manager-H.

98.     Plaintiff pursued numerous reassignments within her unit for which she was qualified, and which would have served as a reasonable accommodation for her disability numerous times through November 2020.

99.     Opportunities available ranged from clerical work to FDA filings and from inventory to quality control, among others.

100.   Plaintiff also asked for remote work as a reasonable accommodation for her disability.

101.   UAB allowed other "at risk" operating room employees to transition to remote work status from the onset of the pandemic.

102.   UAB denied Plaintiff a reasonable accommodation.

103.   Accordingly, Plaintiff avers that Defendants violated Section 504 of the Rehabilitation Act by their failure to consider and/or their denial of reasonable accommodations that would have allowed Plaintiff to continue to safely perform the essential functions of her job.

## **PRAYER FOR RELIEF**

For each of the claims above, Plaintiff Kathryn Thrasher seeks declaratory and injunctive relief, an award of back pay, reinstatement (or front pay in the event reinstatement is deemed inappropriate), compensation for loss of benefits and other make-whole relief, pre- and post-judgment interest, compensation for loss of career opportunities, compensatory and punitive damages for mental anguish and physical injury, attorneys' fees, costs, expenses, and any and all such other relief deemed appropriate.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

Respectfully submitted,

Brian O. Noble
ASB-9735-R39N
Co-Counsel for Plaintiff

OF COUNSEL:

CAPSTONE LAW, LLC
Brian O. Noble, Esq.
3105 Sunview Drive 43888
Vestavia, Alabama 35243
Phone: (205) 578-1210
E-mail: brian.noble@caplawllc.com

**Defendants to be hand-served at:**
**DANIEL, W J**
**1530 3RD AVE S AB 820**
**BIRMINGHAM, AL 35294-0108**