FILED

2024 Sep-30  AM 10:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| KATHRYN THRASHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:22-cv-01324-SGC |
| | ) | |
| UAB HOSPITAL MANAGEMENT, | ) | |
| LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER[1]

This is an employment discrimination case.  The plaintiff, Kathryn Thrasher, claims the defendants, UAB Hospital Management, LLC, and the Board of Trustees of the University of Alabama at Birmingham (collectively, "UAB" or "the hospital"), discriminated against her based on her disability, in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (the "Rehabilitation Act").  (Doc. 1).[2]  The case is before the court on UAB's motion for summary judgment.  (Doc. 17).  The parties have briefed the motion fully, and it is ripe for review.  (Docs. 18, 22, 23).  For the reasons stated below, the court will deny the motion.

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 8).

[2] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. __ at __).

## I.    Standard of Review

Under Rule 56 of the FEDERAL RULES OF CIVIL PROCEDURE, "[t]he [district] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The party seeking summary judgment bears the initial burden of informing the district court of the basis for its motion and identifying those portions of the record the party believes demonstrate the absence of a genuine dispute of material fact. *Celotex Corp.*, 477 U.S. at 323.  If the moving party carries its initial burden, the non-movant must go beyond the pleadings and come forward with evidence showing there is a genuine dispute of material fact for trial. *Id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *Anderson*, 477 U.S. at 248.  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-movant. *Id.* at 248.  If the evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Id.* at 249-50 (internal citations omitted).  All reasonable doubts about the facts should be resolved in favor of the non-movant, and all justifiable inferences should be drawn in the non-movant's favor. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

**II.    Summary Judgment Facts**[3]

Thrasher is a registered nurse.  (Doc. 19-1 at 11).  She suffers from pulmonary alveolar proteinosis, a chronic lung disease that causes symptoms including headaches, fatigue, and difficulty breathing.  (Doc. 19-1 at 16-17).  When COVID-19 arrived in Alabama in March 2020, Thrasher was working the "Baylor shift" in the perioperative services department at UAB.  (Doc. 19-1 at 21, 44; Doc. 19-9 at 1).  The Baylor shift consists of two twelve-hour shifts each weekend, with one weekend of paid leave and one weekend of unpaid leave each year.  (Doc. 19-1 at 12; Doc. 19-25 at 3).  Assistant Nurse Manager Kayla Evans was one of Thrasher's supervisors.  (Doc. 19-1 at 22).

Thrasher notified UAB on April 22, 2020, shortly after her second exposure to COVID-19 at the hospital, that her pulmonologist had recommended she be excused from work or allowed to work from home for between two and three weeks because her lung condition put her at risk for respiratory complications should she become infected with COVID-19.  (Doc. 19-23 at 6-7, 23).  Thrasher used her Baylor

---

[3] The following facts are undisputed, unless otherwise noted.  The court views the facts in the light most favorable to Thrasher, as the non-movant, and gives Thrasher the benefit of all reasonable inferences.  The court largely has excluded from its recitation of facts those facts that are not material to disposition of the pending motion.  Some immaterial facts are included for context.  The court also has excluded from its recitation of facts those facts cited by a party but not marshaled in support of any argument.  The court emphasizes that "what [are] considered to be the 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial." *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 (11th Cir. 1996); *see also Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 747 (11th Cir. 2023) (quoting *Cottrell*).

leave to cover her April 24-25 and May 1-2, 2020 shifts.  (Doc. 19-25 at 3).  She then applied for a twelve-week leave of absence and supported the request with documentation from her pulmonologist and another treating provider regarding the serious risk COVID-19 posed to her as a person with pre-existing pulmonary disease.  (Doc. 19-25 at 3-4, 6, 9, 11-13).[4]  UAB granted Thrasher a twelve-week leave of absence without pay.  (Doc. 19-25 at 4, 10).

After twelve weeks had passed, Thrasher asked UAB to (1) extend her leave of absence,[5] (2) reassign her to one of seven open positions outside the perioperative services department for which she applied,[6] or (3) allow her to return to her job as a nurse in the perioperative services department but exempt her from direct patient care.  (Doc. 19-1 at 41-42, 59, 66; Doc. 19-16 at 6, 14).  Thrasher requested any one of the accommodations only so long as the COVID-19 pandemic remained a

---

[4] Thrasher's pulmonologist, who practiced outside the UAB system, transferred Thrasher's care to a lung disease clinic at UAB at some point during the COVID-19 pandemic.  (Doc. 19-1 at 65-66).

[5] UAB frames this request as one to work remotely.  However, Thrasher's deposition testimony makes clear that she sought to work "away with pay," a term coined by UAB to describe the status of an employee who stays home at its direction and still receives pay despite not performing any work and that she uses the terms "away with pay" and "working remotely" interchangeably.  (Doc. 19-1 at 41-42, 59, 66; Doc. 19-23 at 6).  Insofar as working "away with pay" and taking a leave of absence both involve retaining employment without being physically present at the workplace or performing work outside it, the court will use the latter term to describe this particular accommodation sought by Thrasher.

[6] Thrasher provided UAB documentation completed by her treating provider at the UAB lung disease clinic, stating she could return from leave subject to the condition she be permitted to work in an office setting that would allow her to observe social distancing protocols.  (Doc. 19-25 at 15-16).

particular threat to her due to her lung disease but concedes she was not able to define that duration more precisely. (Doc. 19-1 at 67-68). She just "knew [the COVID-19 pandemic] couldn't last forever." (Doc. 19-1 at 67).

The seven open positions outside the perioperative services department for which Thrasher applied were two case manager positions, a house supervisor position, a STAT nurse position, a nursing informatics position, a telemedicine position, and a patient flow coordinator position. (Doc. 19-13 at 1; Doc. 19-29 at 5). Thrasher was not selected to fill any of them. (Docs. 19-24; 19-27; 19-28; 19-30; 19-31). UAB has submitted evidence showing four of the positions required direct patient care: the case manager positions, the house supervisor position, and the STAT nurse position. (Docs. 19-27; 19-28; 19-30). It has submitted evidence applicants better qualified than Thrasher were selected to fill the nursing informatics position and the telemedicine position and that the patient flow coordinator position would have been a promotion for Thrasher. (Doc. 19-24; Doc. 19-30; Doc. 19-31).[7]

UAB did not grant Thrasher the extended leave she requested or allow her to return to the perioperative services department as a nurse temporarily excused from direct patient care, either. The hospital instead terminated Thrasher's employment

---

[7] The evidence described above is overlapping in the case of some positions. The court does not describe the overlapping evidence more fully because it is not necessary.

in early November 2020.  (Doc. 19-1 at 60).[8]  Assistant Nurse Manager Evans made the decision.  (Doc. 19-23 at 8).  She testified when deposed that the basis of her decision was Thrasher's inability to perform direct patient care and later submitted a declaration stating direct patient care is an "essential function" of a perioperative services nurse.  (Doc. 19-17 at 8, 11; Doc. 19-23 at 4).  (The term "essential function" is one of art that the court will discuss below.)  Attached to Evans's declaration is the formal job description for the perioperative services nurse position.  It identifies key duties and responsibilities of the position to include assessing patients before, during, and after surgery; circulating within the perioperative suite; and working directly with surgeons in the sterile field.  (Doc. 19-23 at 9).

Thrasher disputes that providing direct patient care is an essential function of a perioperative services nurse.  She testified when deposed that the job of a perioperative services nurse encompasses more than caring directly for patients.  She further testified that during her time in the perioperative services department there were perioperative services nurses who worked exclusively in non-patient facing roles assembling sterile trays, managing implants and materials, banking bone and tissue, and providing professional development assistance.  Thrasher testified there always was work to be done in these areas of the perioperative services department

---

[8] The court notes that, although UAB did not extend Thrasher's leave of absence for the duration she requested, the hospital did afford Thrasher an additional fourteen weeks of leave beyond the twelve weeks it initially granted her.

and she knew how to do the work.  Finally, Thrasher testified UAB facilitated these types of assignments for perioperative services nurses who had a temporary need to avoid caring directly for patients and did not require a formal application.  (Doc. 19-1 at 33-35, 39, 49, 54-57).

In her declaration, Assistant Nurse Manager Evans denied that perioperative services nurses had been excused from direct patient care and referenced a desperate need for nurses to provide such care during the COVID-19 pandemic.  (Doc. 19-23 at 3-6, 8).  The manager of employment for the hospital submitted a declaration stating many of the non-patient facing roles Thrasher testified were part of the job of an perioperative services nurse actually were roles that existed independently of the position.  (Doc. 19-29 at 5).

## III.   Discussion

The Rehabilitation Act prohibits federal executive branch agencies and recipients of federal financial assistance from discriminating against disabled employees.  29 U.S.C. § 794(a).[9]  A plaintiff establishes a *prima facie* case of disability discrimination under the Rehabilitation Act by showing (1) she has a disability,[10] (2) she is a "qualified individual," meaning she can perform the

---

[9] UAB does not contest that it is a recipient of federal financial assistance subject to the Rehabilitation Act.

[10] To prove she has a disability within the meaning of the Rehabilitation Act, a plaintiff must show (1) she has "a physical or mental impairment that substantially limits one or more major life activities"; (2) she has a record of such an impairment; or (3) she is "regarded as" having such an

"essential functions" of her job without accommodation or, failing that, with a reasonable accommodation, and (3) her employer discriminated against her "solely by reason of her [] disability."  29 U.S.C. § 794(a); 42 U.S.C. § 12111(8); *Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2017); *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005); *Davis v. Florida Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000).  A plaintiff may satisfy the third prong of a *prima facie* case of disability discrimination by showing either that her employer failed to provide a reasonable accommodation for her disability or that her employer subjected her to an adverse employment action, such as discharge, because of her disability.  *Boyle*, 866 F.3d at 1289.[11]  Thrasher asserts both a failure to accommodate claim and a

---

impairment, meaning her employer perceives her as having such an impairment even if she does not actually have such an impairment. 42 U.S.C. § 12102(1); *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1216 (11th Cir. 2021).  UAB does not dispute the pulmonary alveolar proteinosis from which Thrasher suffers is a disability within the meaning of the Rehabilitation Act for purposes of its motion for summary judgment but reserves the argument in the event of a trial.  (Doc. 18 at 20, 20 n.7).

[11] Thrasher filed charges of discrimination with the Equal Employment Opportunity Commission (the "EEOC") before commencing this lawsuit.  The EEOC found Thrasher could not perform the essential functions of her job as a perioperative services nurse but determined there was reasonable cause to believe UAB should have reassigned Thrasher to one of the seven open positions outside the perioperative services department for which she applied as an accommodation for her lung disease.  (Doc. 19-22 at 7-8).  The EEOC also found there was reasonable cause to believe UAB discharged Thrasher because of her disability.  (Doc. 19-22 at 7-8).  The EEOC charges were evaluated under the Americans with Disabilities Act of 1990 (the "ADA"), instead of the Rehabilitation Act.  (Doc. 19-22 at 7-8).  While the Rehabilitation Act prohibits federal executive branch agencies and recipients of federal financial assistance from discriminating against disabled employees, the ADA prohibits that conduct by private employers with more than 15 employees and by state and local governments.  *See* 42 U.S.C. §§ 12111(2) and (5), 12112(a), 12131(1), 12132.  Discrimination claims proceeding under the Rehabilitation Act largely are governed by the same standards as discrimination claims proceeding under the ADA, and cases decided under the ADA are precedent for cases decided under the Rehabilitation Act.  *Cash v. Smith*, 231 F.3d

discriminatory discharge claim.

### A. Failure to Accommodate

Failure to provide a disabled employee with a reasonable accommodation constitutes discrimination under the Rehabilitation Act, unless the accommodation would impose an undue hardship on the employer. *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1262 (11th Cir. 2007). The employee has the burden of identifying an accommodation and showing it is reasonable. *Holbrook v. City of Alpharetta, Georgia*, 112 F.3d 1522, 1526 (11th Cir. 1997). The employer has the burden of showing the accommodation would impose an undue hardship on it. *Id.*

An employee seeking the protections of the Rehabilitation Act must be able to perform the essential functions of her job without accommodation or, failing that, with a reasonable accommodation, and an accommodation is reasonable only if it enables an employee to perform the essential functions of her job. *Holly*, 492 F.3d at 1256. This is another way of saying the Rehabilitation Act does not require an employer to eliminate an essential function of an employee's job to accommodate

---

1301, 1305 n.2 (11th Cir. 2000); *Karantsalis v. City of Miami Springs, Florida*, 17 F.4th 1316, 1321-22 (11th Cir. 2021). One notable exception is that the Rehabilitation Act requires that a plaintiff's disability be the "sole[]" reason for the discrimination, whereas the ADA requires only a lesser "but for" standard of causation. § 794(a); *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008). Because some of the conclusions the court reaches below differ from the determinations made by the EEOC, the court notes an EEOC determination "is in no sense binding on [a] district court." *Smith v. Universal Servs., Inc.*, 454 F.2d 154, 157 (5th Cir. 1972); *see also Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding decisions of the former Fifth Circuit rendered prior to close of business on September 30, 1981, are binding in Eleventh Circuit).

the employee's disability.  *Id.*  However, it may require an employer to restructure an employee's job by altering or eliminating "marginal" functions.  *Id.*

"Determining whether a particular job duty is an essential function involves a factual inquiry to be conducted on a case-by-case basis."  *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1258 (11th Cir. 2001).  A court may consider an employer's judgment as to whether a function is essential, a written description of the job, the amount of time spent on the job performing the function, the consequences of not requiring the employee to perform the function, the terms of a collective bargaining agreement, the work experience of past employees in the position, and the current work experience of employees in similar positions.  42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(n)(3); *Bagwell v. Morgan Cnty. Comm'n*, 676 F. App'x 863, 865-66 (11th Cir. 2017).  An employer's judgment as to whether a function is essential is entitled to "substantial weight." *Bagwell*, 676 F. App'x at 866.  However, it is not, as the defendants suggest, "dispositive."  (*See* Doc. 18 at 21).  If an employer's judgment was conclusive, it could avoid the mandate of the Rehabilitation Act simply by asserting a function a disabled employee no longer can perform is essential.  *Holly*, 492 F.3d at 1258.

Reassignment to a different position is another accommodation that may be reasonable.  *United States Equal Emp. Opportunity Comm'n v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1345 (11th Cir. 2016).  The position the plaintiff seeks must be

vacant, and the plaintiff must be qualified for the position. *Boyle*, 866 F.3d at 1289. When the accommodation sought is reassignment, the relevant question is not whether the plaintiff is qualified with respect to the position she holds, but whether she is qualified with respect to the position she seeks. *St. Joseph's Hosp.*, 842 F.3d at 1344. An employer is not required to reassign a disabled employee without competition, give preferential treatment to a disabled employee, or promote an employee to accommodate her disability. *Id.* at 1345; *Boyle*, 866 F.3d at 1289. In the case of an employer that operates a business for profit, generation of profit requires efficiency and good performance, and passing over a more-qualified job applicant in favor of a less-qualified job applicant is not a reasonable way to promote either requirement. *St. Joseph's Hosp.*, 842 F.3d at 1345. In the case of a hospital, there is even greater reason not to interfere with a best-qualified applicant policy: "the well-being and even the lives of patients can depend on having the best-qualified personnel." *Id.*

"[A] leave of absence might be a reasonable accommodation in some cases," if it would allow an employee to continue work "in the immediate future." *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003). Conversely, the accommodation is not reasonable if it would allow an employee to resume her job only "at some uncertain point in the future." *Id.*; *see also Billups v. Emerald Coast Util. Auth.*, 714 F. App'x 929, 935-36 (11th Cir. 2017) (holding that under second prong of failure

11

to accommodate analysis, employee's open-ended request for leave was not reasonable).

"[A]n employer is not required to accommodate an employee in *any* manner that the employee desires – or even provide that employee's preferred accommodation." *D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1022 (11th Cir. 2020). However, whatever accommodation an employer does provide a qualified individual must be reasonable. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285-86 (11th Cir. 1997).

Finally, an accommodation would impose an undue hardship on an employer if it would "requir[e] significant difficulty or expense" when considered in light of several factors. 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1630.2(p)(1). Those factors include the nature of the employer's operation; the employer's financial resources and number of employees; the nature and cost of the accommodation; the effect of the accommodation on the employer's expenses and resources; and any other impact of the accommodation on the employer's operation. 42 U.S.C. § 12111(10)(B); 29 C.F.R. § 1630.2(p)(2). A finding of undue hardship relieves an employer of the obligation to provide the accommodation at issue to an employee, even if the accommodation otherwise is reasonable. *Holly*, 492 F.3d at 1262.

As stated, Thrasher proposed three accommodations to UAB: (1) an extension of her leave of absence pending abatement of the COVID-19 pandemic, (2) a

temporary reassignment to one of the seven open positions outside the perioperative services department for which she applied, and (3) the temporary elimination of direct patient care from her responsibilities as a perioperative services nurse.

### 1. Extension of Leave of Absence

The leave of absence Thrasher proposed would not have been a reasonable accommodation because Thrasher was not able to define the duration of the absence she sought beyond stating it was not "forever." (*See* Doc. 19-1 at 67-68). As discussed, an open-ended request for leave that would allow an employee to return to work only at some uncertain time in the future, like the one made by Thrasher, is not reasonable. *Wood*, 323 F.3d at 1314; *Billups*, 714 F. App'x at 935-36.

### 2. Temporary Reassignment

None of the seven open positions outside the perioperative services department for which Thrasher applied would have been reasonable accommodations, either. UAB has submitted evidence showing the positions would have required direct patient care, the very work Thrasher's lung disease prevented her from doing; were filled by applicants better qualified than Thrasher; and/or would have been promotions for Thrasher. (Docs. 19-24; 19-27; 19-28; 19-30; 19-31). Thrasher has not responded with evidence that would create a genuine dispute of material fact regarding any showing. The undisputed evidence therefore establishes the positions would not have been reasonable accommodations. As

discussed, an accommodation is not reasonable if an employee cannot perform an essential function of the position, and the law does not require an employer to accommodate a disabled employee by promoting her or reassigning her to a position for which a better-qualified candidate has applied. *See St. Joseph's Hosp.*, 842 F.3d at 1345; *Boyle*, 866 F.3d at 1289.[12]

### 3.   Temporary Elimination of Direct Patient Care from Perioperative Services Nurse Responsibilities

There is a genuine dispute of material fact as to whether the elimination of direct patient care from Thrasher's responsibilities as a perioperative services nurse would have been a reasonable accommodation.  Resolution of the dispute hinges on whether an essential function of a perioperative services nurse is caring directly for patients.  If direct patient care is an essential function of a perioperative services nurse, elimination of the function from Thrasher's job responsibilities, even temporarily, would not be reasonable.  *See Holly*, 492 F.3d at 1256 (explaining an

---

[12] In an effort to save her claim that transfer to one of the seven open positions outside the perioperative services department for which she applied would have been a reasonable accommodation, Thrasher maintains Assistant Nurse Manager Evans promised to help her obtain a new position but did nothing and asserts Evans's "misdirection" and "lack of interest" demonstrate a "lack of good faith."  (Doc. 22 at 24-25).  The court presumes Thrasher references an employer's obligation in some cases to engage in an interactive process with a disabled employee for the purpose of identifying a reasonable accommodation.  *See Frazier-White v. Gee*, 818 F.3d 1249, 1257-58 (11th Cir. 2016) (discussing obligation).  Regardless of an employer's failure to engage in an interactive process with a disabled employee for the purpose of identifying a reasonable accommodation, an employee cannot succeed on a failure to accommodate claim unless she can show a reasonable accommodation existed.  *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997).  As discussed above, Thrasher has not discharged this burden as concerns her request for a temporary reassignment.

employer is not required to eliminate essential function of employee's job to accommodate employee's disability). For that matter, Thrasher would not be a qualified individual under the Rehabilitation Act. *See* 42 U.S.C. § 12111(8) (defining qualified individual as someone who can perform essential functions of her job). However, if direct patient care is not an essential function of a perioperative services nurse, the temporary elimination of the function from Thrasher's job responsibilities may have been a reasonable accommodation for her lung disease.

UAB has presented evidence that would support an affirmative answer to the central question, including the formal job description for the position of a perioperative services nurse and the declarations submitted by Assistant Nurse Manager Evans and the manager of employment for the hospital. (Doc. 19-23 at 3-6, 8-9; Doc. 19-29 at 5). However, Thrasher has come forward with more than a mere scintilla of evidence that, in practice, perioperative services nurses could and did work exclusively in capacities outside of direct patient care and that UAB facilitated this type of informal assignment for perioperative services nurses who had a temporary need to avoid caring directly for patients. That evidence is Thrasher's own testimony regarding what she observed and experienced on the job. (Doc. 19-1 at 33-35, 39, 49, 54-57).

UAB attempts to neutralize Thrasher's evidence going to the central question by characterizing her testimony as unsupported allegations of fact and emphasizing

they have submitted evidence contradicting the testimony.   (Doc. 23 at 5-6).
Characterization of Thrasher's testimony as unsupported factual allegations is a
*mis*characterization.  The testimony is itself *evidence* of Thrasher's contention direct
patient care is not an essential function of a perioperative services nurse.  Moreover,
because the testimony qualifies as evidence of Thrasher's contention that caring
directly for patients is not an essential function of a perioperative services nurse, the
fact that UAB has submitted evidence contradicting the testimony is of no matter at
this stage of the litigation, except insofar as it underscores the need for a trial to
resolve a genuine dispute of material fact.

The subtext of UAB's arguments with respect to Thrasher's testimony seems
to be that the testimony is not credible and does not outweigh UAB's own evidence
as to whether direct patient care is an essential function of a perioperative services
nurse.  However, it is for the factfinder, which in this case is a jury and not the court,
to assess Thrasher's credibility and assign weight to her testimony in relation to
UAB's evidence.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,
150 (2000) (" 'Credibility determinations, the weighing of the evidence, and the
drawing of legitimate inferences from the facts are jury functions, not those of a
judge.'") (quoting *Liberty Lobby*, 477 U.S. at 255); *Cleveland*, 369 F.3d at 1193
(quoting *Reeves*).

UAB finally suggests it does not matter whether the temporary elimination of direct patient care from Thrasher's responsibilities as a perioperative services nurse would have been a reasonable accommodation because UAB provided Thrasher within an alternative, reasonable accommodation – a twenty-six week leave of absence – and Thrasher is not entitled to an accommodation of her choosing.  (Doc. 18 at 25-26).  It cites *Billups* and *May v. City of Union Springs*, 2021 WL 1425319 (M.D. Ala. Apr. 15, 2021), in support of the suggestion.  (Doc. 18 at 26).  If direct patient care is an essential function of a perioperative services nurse, meaning elimination of direct patient care from Thrasher's job responsibilities would not have been a reasonable accommodation, the leave of absence UAB provided to Thrasher may have been sufficient to comply with the hospital's obligations under the Rehabilitation Act.  *See Billups*, 714 F. App'x at 935-36 (holding employer had done enough to comply with its obligations under ADA by providing employee with leave of absence of definite duration and had no obligation to extend employee's leave where there was no question of fact employee could not perform essential functions of job when leave expired); *May*, 2021 WL 1425319, at *3 (same).  Because a genuine dispute of material fact precludes the court from determining direct patient care is an essential function of a perioperative services nurse, the fact that UAB provided a leave of absence to Thrasher does not entitle the hospital to summary judgment on Thrasher's failure to accommodate claim.  The court is not persuaded

the Rehabilitation Act permits an employer to provide an accommodation to a disabled employee and, on expiration of the accommodation, decline to provide some other accommodation that would enable the employee to perform the essential functions of her job.

Because there is a genuine dispute of material fact as to whether direct patient care is an essential function of a perioperative services nurse and, in turn, whether the elimination of direct patient care from Thrasher's responsibilities as a perioperative services nurse would have been a reasonable accommodation, the court will consider whether UAB has shown the accommodation would have imposed an undue hardship on the hospital.  If the accommodation would have imposed an undue hardship on UAB, the hospital was not required to provide it to Thrasher, even if the accommodation otherwise was reasonable. *See Holly*, 492 F.3d at 1262 (explaining employer is not required to provide disabled employee with accommodation that would impose undue hardship on employer).

UAB asserts provision of the accommodation to Thrasher would have imposed an undue hardship on the hospital because there was a desperate need for nurses to provide direct patient care during the COVID-19 pandemic.  UAB devotes less than a full paragraph to this argument, which appears on the last page of the hospital's opening brief in support of its motion for summary judgment.  (Doc. 18 at 32).

An argument a hospital could not eliminate direct patient care from the responsibilities of a perioperative services nurse in the early months of a pandemic is persuasive in the abstract, and the court is aware of the nursing shortage during the COVID-19 pandemic as a general matter.  However, an abstract argument does not satisfy UAB's burden of proof on the issue of undue hardship, and the lone piece of evidence UAB submits to ground the abstraction is Assistant Nurse Manager Evans's reference to a desperate need for nurses to provide direct patient during the COVID-19 pandemic.  (Doc. 19-23 at 8).  The court cannot say the reference, unaccompanied as it is by a finer articulation of UAB's need for nurses to provide direct patient care, would preclude a reasonable jury from rejecting UAB's undue hardship argument.  For issues on which the party moving for summary judgment would bear the burden of proof at trial, such as the hardship imposed by a disability accommodation, the moving party must come forward with credible evidence that would entitle it to a directed verdict if it wishes to avoid trial.  *Fitzpatrick*, 2 F.3d at 1115.  This means it must come forward with evidence on the basis of which no reasonable jury could find for the non-moving party.  *Id.*  The evidence offered by UAB falls short of satisfying this standard.  Moreover, even assuming the need at UAB was desperate, Evans does not explain why she could not have retained Thrasher as a perioperative services nurse excused from direct patient care while still seeking to employ operating room nurses who could perform that function.

**B. Discriminatory Discharge**

Disparate treatment occurs when a disabled employee "is singled out for disadvantage because of her disability." *Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1227 (S.D. Fla. 2010). Courts often evaluate this type of disability discrimination claim using the framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Center v. Sec'y, Dep't of Homeland Sec., Customs and Border Protection Agency*, 895 F.3d 1295, 1303 (11th Cir. 2018).[13] This framework requires that, after a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action at issue. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004). The burden is one of production, not persuasion. *Id.* The defendant need not persuade the court it actually was motivated by the reason articulated. *Id.* If the defendant articulates a legitimate, non-discriminatory reason for the adverse employment action, the burden returns to the plaintiff to show the

---

[13] The *McDonnell Douglas* burden-shifting framework applies only where, as here, a plaintiff relies on circumstantial, as opposed direct, evidence to establish her claim. Moreover, the *McDonnell Douglas* burden-shifting framework "is not the *sine qua non*" for a plaintiff to survive summary judgment in relation to a discrimination claim based on circumstantial evidence. *Sims v. MVM, Inc.*, 704 F.3d 1327, 1333 (11th Cir. 2013). "Instead, 'the plaintiff will always survive summary judgment if [s]he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent.'" *Id.* (quoting *Smith v. Lockheed Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). "A triable issue of fact exists 'if the record, viewed in the light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Id.* (quoting *Smith*, 644 F.3d at 1328).

proffered reason is a pretext for discrimination. *Id.*; *Phillips v. Legacy Cabinets*, 87 F.4th 1313, 1321 (11th Cir. 2023). A reason is not a pretext for discrimination unless it is shown both that the reason is false and that discrimination was the real reason. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312 (11th Cir. 2018). Evidence of pretext may include the same evidence offered initially to establish a *prima facie* case. *Reeves*, 530 U.S. at 143; *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004), *abrogated on other grounds by Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1218 (11th Cir. 2019). Moreover, evidence the defendant's proffered reason for discharging the plaintiff is false may permit an inference discrimination was the real reason, although it does not compel the inference and, in some cases, does not support it. *St. Mary's Honor Ctr.*, 509 U.S. at 511; *Reeves*, 530 U.S. at 146-49; *Phillips*, 87 F.4th at 1326-27.[14]

Thrasher contends the pulmonary alveolar proteinosis from which she suffers is a disability within the meaning of the Rehabilitation Act. She contends she is a qualified individual under the Act because she could have performed the essential functions of her job as a perioperative services nurse if UAB had accommodated her

---

[14] For example, notwithstanding evidence the proffered reason is false, the defendant would be entitled to summary judgment if the record "conclusively reveals" some other, non-discriminatory basis for the plaintiff's discharge, or if the plaintiff has "created only a weak issue of fact" as to the veracity of the proffered reason and there is "abundant and uncontroverted independent evidence" no discrimination occurred. *Reeves*, 530 U.S. at 148; *Phillips*, 87 F.4th at 1326 n.11 (quoting *Reeves*).

disability by temporarily eliminating direct patient care from her responsibilities. Finally, she contends that instead of providing an accommodation, UAB terminated her employment because of her disability. (Doc. 22 at 17-20).

UAB challenges the second element of the *prima facie* case of discriminatory discharge Thrasher seeks to establish. It contends direct patient care is an essential function of a perioperative services nurse and so the accommodation proposed by Thrasher neither would have allowed her to perform the essential functions of her job nor was reasonable. It additionally offers Thrasher's inability to perform what it contends was an essential function of her job – direct patient care – as its legitimate, non-discriminatory reason for discharging Thrasher. (Doc. 18 at 20-30). Thrasher challenges the proffered reason with the assertion that is central to her *prima facie* case: performing direct patient care was not an essential function of her job. (Doc. 22 at 20).

As is clear from recitation of the parties' arguments, the fate of Thrasher's discriminatory discharge claim largely turns on whether the provision of direct patient care is an essential function of a perioperative services nurse. The court has discussed the conflicting evidence on the issue in relation to Thrasher's failure to accommodate claim. The import of the evidence here – more specifically, the import of the evidence direct patient case is *not* an essential function of a perioperative services nurse – is that Thrasher has satisfied her summary judgment burden on the

second element of her *prima facie case* of discriminatory discharge and, jumping ahead, has created a genuine dispute of material fact as to whether the reason proffered by UAB for the adverse action it took against her is a pretext for discrimination.[15]  *See Boone v. Rumsfeld*, 172 F. App'x 268, 273 (11th Cir. 2006) (holding legitimacy of employer's proffered reason for discharging employee – employee's medical inability to perform essential functions of job – was a question for trial where there was a genuine dispute of material fact regarding whether functions employee was unable to perform were essential); *Equal Emp. Opportunity Comm'n v. Allstate Beverage Co., LLC*, 2022 WL 10197690, at *13 (M.D. Ala. Oct. 17, 2022) (same), *vacated in part on reconsideration*, 2023 WL 158211 (M.D. Ala. Jan. 11, 2023), *appeal dismissed*, 2023 WL 5835756 (11th Cir. Aug. 23, 2023).[16,]

---

[15] Thrasher offers as additional evidence of pretext comments she was told Evans made to other UAB employees.  (Doc. 22 at 20).  UAB objects to the court's consideration of the comments on the ground they consist of multiple levels of hearsay.  (Doc. 23 at 11-12).  A district court may consider a hearsay statement in ruling on a motion for summary judgment if the statement could be reduced to admissible form at trial.  *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293-94 (11th Cir. 2012).  If the party against whom hearsay is offered does not object to its consideration, "it could and, if material, should be factored into a summary judgment decision."  *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987).  However, in the event of an objection, the burden falls on the party offering the hearsay to show an evidentiary basis for its admissibility.  *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1207 (11th Cir. 2013).  Thrasher has not articulated an evidentiary basis for the admissibility of Evans's comments made to other UAB employees.  Therefore, the court will not consider the comments.

[16] The district court's holding in *Allstate Beverage Co.* pertained to a claim asserted by the EEOC that an employee was discharged because his employer regarded him as disabled.  2022 WL 10197690, at *12-14.  The district court determined on reconsideration that the EEOC had not pleaded a claim the employee was discharged because his employer regarded him as disabled but, rather, raised the claim for the first time in its summary judgment briefing.  *Allstate Beverage Co.*, 2023 WL 158211, at *2-5.  Based on that determination, the district court vacated its ruling denying summary judgment on the claim.  *Id.* at *5.  The employer invited the district court to

UAB also contends Thrasher cannot establish the third element of a *prima facie* case of discriminatory discharge. The basis of its contention is two-fold. First, it asserts the perioperative services nurses Thrasher claims received exemptions from providing direct patient care are not proper comparators for purposes of demonstrating Thrasher was singled out for disadvantage because of her disability. (Doc. 18 at 30). Second, it maintains Thrasher cannot show her discharge was "solely by reason of her [] disability" because Thrasher testified she believed UAB terminated her employment both because of her disability and in retaliation for her escalation of a patient safety concern. (Doc. 18 at 30; Doc. 23 at 6-7).

In the context of a disparate treatment claim, a plaintiff often establishes the third element of a *prima facie* case by identifying a comparator. *Hill v. Branch Banking and Tr. Co.*, 264 F. Supp. 3d 1247, 1262 (N.D. Ala. 2017); *Caporicci v. Chioptle Mexican Grill, Inc.*, 189 F. Supp. 3d 1314, 1323 (M.D. Fla. 2016), *aff'd*, 729 F. App'x 812, (11th Cir. 2018). A comparator is an employee outside a plaintiff's protected class but otherwise "similarly situated [to the plaintiff] in all material respects" who received more favorable treatment than the plaintiff. *See Lewis*, 918 F.3d at 1218 (clarifying "comparator" analysis in context of Title VII race discrimination claim). However, comparator evidence is not the only means of

---

revisit its holding regarding the legitimacy of the proffered reason for discharging the employee, but the district court declined. *Id.* at *5-6.

establishing the third element of a *prima facie* case of disparate treatment.  *See, e.g.*, *Smith*, 644 F.3d at 1328 (holding failure to identify comparator "does not necessarily doom the plaintiff's case"); *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010) (stating methods of presenting *prima facie* case of discrimination under *McDonnell Douglas* framework "are flexible and depend on the particular situation"); *Burke-Fowler v. Orange Cnty., Florida*, 447 F.3d 1319, 1325 (11th Cir. 2006) (holding plaintiff failed to establish *prima facie* case of race discrimination because she did not identify comparator or present other circumstantial evidence suggesting race discrimination).

The court does not understand Thrasher to have offered any perioperative services nurse as a comparator for purposes of establishing the third element of a *prima facie* case of discriminatory discharge.  The court views Thrasher's testimony regarding perioperative services nurses who received exemptions from providing direct patient care as evidence going to the second element of her *prima facie* case of discriminatory discharge that caring directly for patients is not an essential function of a perioperative services nurse.  Moreover, Thrasher has satisfied her summary judgment burden on the third element of a *prima facie* case of discriminatory discharge with her citation to Assistant Nurse Manager Evans's explanation for the discharge decision.  Evans testified she discharged Thrasher because Thrasher could no longer perform direct patient care.  (Doc. 19-17 at 8, 11).

This testimony is evidence UAB discharged Thrasher because of her disability, insofar as Thrasher's inability to perform direct patient care was a product of her pulmonary alveolar proteinosis. *See Allstate Beverage Co.*, 2022 WL 10197690, at *12-13 (holding employer's letters expressly terminating employee because it perceived his medical conditions prevented him from performing job functions, the essential nature of which was disputed, supported third element of *prima facie* case of discriminatory discharge under ADA).

The court agrees Thrasher's discriminatory discharge claim necessarily will fail if UAB discharged her partly because of her disability and partly in retaliation for a patient safety report she filed. The Rehabilitation Act prohibits discrimination against a disabled person "solely by reason of her [] disability," 29 U.S.C. §794(a), which means "[i]t is not enough for a plaintiff to demonstrate that an adverse employment action was based partly on [her] disability," *Ellis*, 432 F.3d at 1326.[17]

---

[17] Thrasher asserts it does not appear that the Eleventh Circuit squarely has addressed the standard of causation applicable to a claim brought under the Rehabilitation Act and maintains the law does not limit actionable conduct to discrimination based solely on a person's disability. (Doc. 22 at 19). Thrasher simply is wrong on this point. The Eleventh Circuit held nearly twenty years ago in *Ellis* that an employee must show her employer discriminated against her based solely on her disability to establish a claim under the Rehabilitation Act, 432 F.3d at 1326, and has reaffirmed this is as the applicable standard of causation in the intervening years, *see, e.g., Nadler v. Harvey*, 2007 WL 2404705, at *8 (11th Cir. Aug. 24, 2007); *Harrison v. Sheriff, Homes Cnty. Florida*, 2024 WL 449374, at *4 (11th Cir. Feb. 6, 2024). Thrasher suggests that in *Forsyth v. Univ. of Alabama, Bd. of Trs.*, 2021 WL 4075728 (11th Cir. Sept. 8, 2021), the Eleventh Circuit implied an employee need only show her employer discriminated against her as a result of her disability or, otherwise put, that her disability was the but-for cause of the adverse action taken by her employer, a less onerous standard of causation. (Doc. 22 at 19). The foundation of this suggestion is the fact that the appeals court noted in discussing the procedural history of the case that the district court had determined the employee's discriminatory discharge claim failed in part because

However, the court does not view Thrasher's testimony regarding her belief UAB had mixed motives for discharging her as conclusive of the matter. The court views the testimony as showing there is a question of fact for a jury to decide.

## IV.   Conclusion

For the reasons stated above, the court **DENIES** the motion for summary judgment (Doc. 17) filed by UAB.

**DONE** this 30th day of September, 2024.

_Staci G. Cornelius_

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE

---

the employee had not shown he was discharged solely by reason of his alleged disability and then in the discussion portion of the opinion stated the employee was required to show he was subject to unlawful discrimination as a result of his alleged disability. *See Forsyth*, 2021 WL 4075728, at *3-4. However, the Eleventh Circuit did not explicitly reject the district court's articulation of the applicable causation standard, explicitly adopt a but-for causation standard, or apply a but-for causation standard to the facts before it. It affirmed the district court's decision on the grounds the employee had neither shown he had, or was regarded as having, a disability nor rebutted the employer's legitimate, non-discriminatory reason for discharging the employee. *See id.* at *4-6. All of this is to say, Thrasher reads too much into the language from *Forsyth* on which she relies.